IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **LESTER J. SMITH,** | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | CIVIL NO. 5:12-cv-15-MTT-CHW |
| | : | |
| Warden **CARL HUMPHREY, et. al.,** | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| **Defendants** | : | BEFORE THE U.S. MAGISTRATE JUDGE |

## ORDER & RECOMMENDATION

Plaintiff **LESTER J SMITH**, a prisoner at Hancock State Prison in Sparta, Georgia, has filed a *pro se* 42 U.S.C. § 1983 civil rights action. Plaintiff also seeks leave to proceed without pre-payment of the $350.00 filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Based on Plaintiff's submissions, the Court finds that Plaintiff is presently unable to prepay the filing fee. The Court will accordingly **GRANT** Plaintiff's motion to proceed in *forma pauperis* [Doc. 2] and waive the initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). Plaintiff is nevertheless obligated to pay the full filing fee, as is directed later in this Order and Recommendation. The Clerk of Court is thus **DIRECTED** to send a copy of this Order and Recommendation to the business manager of Hancock State Prison.

The Court has also conducted a review of Plaintiff's Complaint [Doc. 1] and all supplements thereto [Docs. 6, 8, 9, & 10], as required by 29 U.S.C. § 1915A(a), and finds that the Complaint fails to state a claim against the fictitious parties, an Eighth Amendment claim for inadequate medical care, or any constitutional claims based on the alleged confiscation of his mail or denial of access to the telephone. It is thus **RECOMMENDED** that those claims and

1

Defendants "**John and Jane Doe**," **Foskey**, **Burnside**, **Gore**, **Mintz**, **Fields** and **Myrick**[1] be **DISMISSED** from this action under 28 U.S.C. § 1915A(b)(1). Service is to be made only on Defendants **Humphrey**, **Murphy**, and **Powell**.

## STANDARD OF REVIEW

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. See 28 U.S.C. § 1915A(a). In so doing, the district court must accept all factual allegations in the Complaint as true. Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

A district court must, nonetheless, dismiss a prisoner complaint after the initial review if it (1) "is frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b); see also 28 U.S.C. §1915(2)(B) (requiring the same of prisoners proceeding *in forma pauperis*).

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). A complaint is thus properly dismissed by the district court *sua sponte* if it is found to be "without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).

---

[1] Though not reflected on the Docket, Plaintiff added **Shevondah Fields** and **Ricky Myrick** as Defendants in one of his supplements [Doc. 10].

2

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). A complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. In other words, the complaint must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

To state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming court's dismissal of a § 1983 complaint because factual allegations were insufficient to support alleged constitutional violation); see also 28 U.S.C. § 1915A(b) (dictating that a complaint, or any portion thereof, that does not meet standard in § 1915A "shall" be dismissed).

**PLAINTIFF'S ALLEGATIONS**

The present action arises out the transfer of Plaintiff Lester J. Smith into the administrative segregation unit at the Georgia Diagnostic and Classification Prison ("GDCP") on August 18, 2010. Though Plaintiff does not expressly dispute the original decision to transfer him to administrative segregation, he does claim the prison officials' failure to provide him with a

"periodic" review while he was in segregation, as required by the Department of Corrections standard operating procedures, violated his right to Due Process. Plaintiff alleges that Defendants **Humphrey**, **Powell**, and **Murphy** (all presumably members of the "Classification Committee") were "personally involve[d]" in the decisions to keep him in segregation.

Plaintiff filed a grievance about the matter, and it was denied. Plaintiff's attempt to grieve the matter may have in fact made things worse. Plaintiff claims that, on May 31, 2011, Defendants **Humphrey** and **Powell** threatened that "he will not leave" the segregation unit as long as he continues to file grievances or assist other inmates in doing so. Plaintiff continued to file grievances and was held in segregation for another three months. Plaintiff claims that he spent a total of fourteen months in segregation, from about August 17, 2010 through October 7, 2011.

During this period, Plaintiff was also allegedly denied medical care. Plaintiff claims that did not receive any treatment for his Hepatitis C while in segregation. He further claims that a prison nurse, Defendant **Gore R.N.**, refused to submit his requests for optometry care and other medical treatment while he was in segregation, that he was denied dental care, and that **Dr. Burnside** refused to allow Plaintiff to see his medical file while he was in segregation.

The Complaint further alleges that, while in segregation, Plaintiff enrolled in a "private correspondence course" and received authorization to order a "folder" for his studies on May 5, 2011. Plaintiff placed the order and paid for the folder; but when it arrived in the mail on May 31, 2011, Plaintiff was not permitted to have it. Plaintiff filed a grievance, and the unit manager, Defendant **Mintz**, told Plaintiff that he would receive his folder. Plaintiff believes, however, that the folder was confiscated by prison officials in retaliation for his filing of grievances. Plaintiff's father has also complained about the taking of Plaintiff's folder and of the prison's handling of Plaintiff's mail in general. In letters filed as a supplement [Doc. 6] to Plaintiff's Complaint,

Plaintiff alleges that Warden **Humphrey** "and his agents" have "obstructed" Plaintiff's receipt of "mail on several occasions."[2]

In an amendment to his Complaint [Doc. 10], Plaintiff further alleges that Defendants **Humphrey** and **Powell** refused to allow Plaintiff to contact his attorney by telephone in violation of prison procedure and that Defendants **Shevondah Fields** and **Ricky Myrick** violated his rights by denying his grievances and failing to resolve his problems.

## ANALYSIS OF CLAIMS

Plaintiff has now filed the present civil rights suit, pursuant to 42 U.S.C. § 1983, alleging (1) that his long-term placement in administrative segregation violated his right to due process, (2) that he was denied medical care, (3) that prison officials retaliated against him for filing prison grievances, (4) that prison officials obstructed and confiscated his incoming personal mail, and (5) that officials denied him access to the telephone to call his attorney.   Each of these claims will be briefly addressed below.

It is first noted, however, that Plaintiff has improperly named "**John and Jane Doe**" Defendants in this action.  It is unclear who these parties may be, and it does not appear that Plaintiff has any specific parties in mind when naming the fictitious defendants.   Plaintiff merely states that he seeks compensation from "any and all other john doe defendants, etc. who preside over the classification committee."   The Eleventh Circuit Court of Appeals has held that a plaintiff may sue an unknown defendant only when he sufficiently identifies the defendant to allow service of process.  Moulds v. Bullard, 2009 WL 2488182 (11th Cir. Aug. 17, 2009); Dean v. Barber, 951 F.2d 1210, 1215 16 (11th Cir.1992).   Plaintiff's description of any person who may

---

[2] The supplemental letters also reference alleged unlawful acts by Commissioner Brian Owens and other prison officers. Because those individuals are not named as parties to this action, their alleged conduct does not need to be addressed.

have served on the classification committee is not sufficient to enable the Court to serve the Complaint directly upon these defendants.

It is thus **RECOMMENDED** that the "**John and Jane Doe**" Defendants be **DISMISSED** from this action, as the Court has no way of knowing the names of the relevant "Classification Committee" members in order to perfect service of process in accordance with Fed. R. Civ. P. 4. Plaintiff is advised that it is his responsibility to ascertain their identities, which he must do before the expiration of the statute of limitations. See Talbert v. Kelly, 799 F.2d 62, 66 n. 1 (3d Cir.1986) (explaining that the naming of a Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant).   In the event Plaintiff is able to discover the names of the appropriate parties, he may seek to amend the Complaint to add them at that time, as permitted by Fed. R. Civ. P. 15.

Plaintiff did identify Defendant **Ricky Foskey** in his Complaint.  Foskey is named as a Defendant both in the caption and in the body of the Complaint.   The Complaint, however, fails to make any specific allegations of wrongdoing against Defendant Foskey.   The United States Court of Appeals for the Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that connect the defendants with the alleged constitutional violation.  Douglas v. Yates**,** 535 F.3d 1316, 1322 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").   It is thus also **RECOMMENDED** that Defendant **Rickey Foskey** be **DISMISSED** from this action.

  A. <u>Administrative Segregation, Due Process Claims</u>

  Plaintiff's first claim is that prison officials violated his right to due process by keeping him in administrative segregation for an extended period and without an opportunity to be heard. It is well-settled that the Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. A prisoner thus states a Fourteenth Amendment due process claim when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and a constitutionally inadequate process. <u>Cryder v. Oxendine</u>, 24 F.3d 175, 177 (11th Cir.1994).

  A prisoner, however, may only claim a violation of a protected liberty interest arising out of a prison disciplinary action in two situations: (1) when the punishment "will inevitably affect the duration of his sentence"; or (2) when the punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999). Plaintiff does not allege that his punishment will affect the duration of his sentence; thus the only issue is whether his transfer to segregation imposed an atypical or significant hardship on him.

  As a general rule, the placement of a prisoner in segregation for a reasonably short period, such as thirty days, does not implicate a protected liberty interest as it does not present "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> On the other hand, the transfer of a prisoner into administrative segregation for an entire year or longer may impose an atypical hardship. See <u>Williams v. Fountain</u>, 77 F.3d 372, 374-75 (11th Cir. 1996) (assuming that disciplinary sanction of one-year in solitary confinement triggers procedural due process protections under <u>Sandin</u>). In the present case, Plaintiff claims that he was held in

7

segregation for fourteen months without being afforded an opportunity to be heard. Certainly, at this initial screening stage, the Court must construe all allegations liberally in favor of Plaintiff, and in so doing, the Court concludes that this allegation is sufficient to support a due process claim. Thus, while further factual and legal development of this claim is necessary, these claims will be allowed to go forward against Defendants **Humphrey**, **Murphy**, and **Powell**.

  B. <u>Claims for Denial of Medical Care</u>

  Plaintiff also alleges that he was denied medical care while in segregation. To state an Eighth Amendment claim for inadequate medical treatment, a plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). These allegations must satisfy both an objective and subjective component. <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1186 (11th Cir. 1994), overruled in part on other grounds, <u>Hope v. Peltzer</u>, 536 U.S. 730, 739 (2002). Thus, to survive a frivolity review, a plaintiff must allege that he has an objectively serious medical need which poses a substantial risk of serious harm if left unattended. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11th Cir. 2000). A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. <u>Hill</u>, 40 F.3d at 1187.

  Plaintiff's Complaint fails, however, to allege sufficient facts demonstrating that he had any specific medical need for which he was denied treatment. Plaintiff merely claims that he was denied Hepatitis C treatment, an eye exam, and dental care while he was in segregation. He does not assert that he suffered active symptoms from Hepatitis C or describe what type of treatment he required for this condition. Plaintiff likewise fails to describe what type of eye problems he may

have suffered or why he required dental treatment. He has thus not alleged sufficient facts to support an Eighth Amendment claim for inadequate medical care.

Even if the Court were to presume that Plaintiff had a serious medical need, Plaintiff has also failed to allege facts demonstrating that the named Defendants, **Burnside** and **Gore**, were "deliberately indifferent" to that need. A prison official is deliberately indifferent to an inmate's needs if he had subjective knowledge of a risk of serious harm to the plaintiff and disregarded that risk. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). "[M]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). The facts in the Complaint do not demonstrate that either Defendant knew of a risk of serious harm to Plaintiff, that they disregarded that risk, or that their inaction was more than mere negligence.

To the extent Plaintiff also attempts to recover damages for Dr. Burnside's alleged refusal to allow Plaintiff access to his medical records while in segregation, he has failed to state a cognizable claim. A prisoner does not have a general constitutional right to access such records. Dunn v. Corrections Corp. of America, 2010 WL 2817264 at * 3 (S.D. Ga. June 15, 2010); Brannon v. Thomas County Jail, 2007 WL 1701815 at *10 (M.D. Ga. June 7, 2007) ("There is no per se 'constitutional right' to have a jail or prison facility provide a prisoner with a copy of his medical records . . . ."), aff'd by 280 Fed. Appx. 930 (11th Cir. June 9, 2008).

It is accordingly **RECOMMENDED** that Plaintiff's Eighth Amendment claims against Defendant **Burnside** and **Gore** be **DISMISSED**.

C. Retaliation Claims

Plaintiff's next claims allege that he was kept in administrative segregation and denied access to his incoming mail in retaliation for grievances. Under the First Amendment, a prison official may not retaliate against an inmate for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may thus state an actionable retaliation claim by alleging (1) that his act was constitutionally protected, (2) that the retaliatory conduct adversely affected the protected speech, and (3) that there was a causal connection between the retaliatory actions and the adverse effect on speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir.2005).

It is well-settled that a prisoner may state a claim of retaliation by alleging a prison official retaliated against him for filing a grievance. Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) (holding that prisoner stated retaliation claim based on allegation that he was punished for filing a grievance). In this instance, Plaintiff alleges that, on May 31, 2011, Defendants **Humphrey** and **Powell** stated that he would "not leave" segregation if he continued to file grievances. Plaintiff continued to file grievances, and he was kept in segregation for another three months. Plaintiff's retaliation claims against these Defendants will be allowed to go forward.³

Plaintiff has failed, however, to state any retaliation claim based upon the alleged confiscation of his folder. Though Plaintiff has identified protected conduct and retaliatory action, he fails to identify an individual responsible for the taking or provide a causal connection

---

3 It should be noted that prisoners "do not have a First Amendment right to provide legal assistance to fellow prisoners." Taylor v. McSwain, 335 Fed. Appx. 32, 33 (11th Cir. 2009) (citing Shaw v. Murphy, 532 U.S. 223, 225-232, 121 S.Ct. 1475, 1477-1480, 149 L.Ed.2d 420 (2001)). Therefore, Plaintiff may not state a First Amendment claim based on alleged retaliation for his assisting other inmates in filing grievances. He has only stated a claim for alleged retaliation in response to grievances he filed on his own behalf.

between his protected conduct and the taking of his property. It is thus **RECOMMENDED** that any retaliation claim arising out of the alleged taking of Plaintiff's folder be **DISMISSED** for failure to state a claim.

### D.  Claims for Obstruction & Confiscation of Incoming Personal Mail

It is unclear whether Plaintiff attempts to state a separate claim for prison officials' alleged "obstruction" and confiscation of his incoming personal mail. Plaintiff's Complaint and Supplement do allege, however, that prison officials obstructed Plaintiff's receipt of his personal mail and likely confiscated a folder sent to him through the mail.

An allegation that prison officials maliciously interfered with an inmate's personal mail may state a constitutional claim in some cases. See Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993) ("[P]rison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security.") (citation omitted).

In this instance, Plaintiff fails to connect any of the named Defendants to the alleged unlawful behavior. Plaintiff's Supplement only generally alleges that **Warden Humphrey** and his agents, including Defendants **Mintz** and **Powell** have "obstructed" Plaintiff's mail. It does not allege how these individuals, most of whom are supervisory officials, were personally involved in the alleged interference. It is of course well-settled that wardens and/or supervisors are not liable under § 1983 for the unconstitutional acts of their subordinates merely because of their position or supervisory responsibilities. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Some subordinates – mailroom officers Goodman, Adams, and Johnson and "prison employees" Michael Turner and Julius Paytee – were identified in Plaintiff's supplements, but none of these individuals are named as a defendant in this action. Thus, even if Plaintiff may have a cause of action against these individuals, he has not stated it in this suit.

Plaintiff has also failed to identify who is responsible for the loss or theft of his folder that allegedly arrived in the mail. The mere fact that Plaintiff informed Defendants **Mintz, Fields,** and **Myrick** about this (or any other) event is insufficient to impose liability upon them. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability on supervisory official who merely failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that commissioner could be held liable for damages based on receipt of a letter describing allegedly improper prison conditions).  A prison official's denial of a grievance is likewise not a basis for imposing liability under § 1983. See Larson v. Meek, 240 Fed. Appx. 777, 780 (10th Cir. 2007) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations").

Moreover, even if Plaintiff had named an individual who was arguably responsible for his property loss, he has still failed to state a constitutional claim for the taking.  The Due Process Clause is simply not implicated by a negligent act of [a state] official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986) (italics in original).  The Due Process Clause is also not violated, even if a prison official *intentionally* deprives an inmate of property, if the state makes available a meaningful post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  Georgia provides at least two potential remedies which Plaintiff has apparently not pursued. See O.C.G.A. § 51-10-1; Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (finding no procedural due process violation because Georgia "has provided an adequate post deprivation remedy" in O.C.G.A. § 51-10-1); Byrd v. Stewart, 811 F.2d 554, 555 n. 1 (11th Cir.1987) ("The State of Georgia has created a civil cause of action for the wrongful deprivation of property."); see also O.C.G.A. §§ 28–5–80 through 28–5–86 (providing a Claims Advisory Board by which an

individual may raise a claim against the state or any of its agencies).  Because Georgia provides Plaintiff with meaningful post-deprivation remedies, the taking of his personal property, even if intentional, would not support a due process claim under § 1983.

For all of these reasons, it is **RECOMMENDED** that any attempted constitutional claims based upon the alleged interference with or confiscation of Plaintiff's incoming mail be **DISMISSED** for failure to state a claim.

E.  Claims for Restriction of Outgoing Phone Calls

Plaintiff's final claim is that Defendants **Humphrey** and **Powell** "refused to allow [him] ... to contact his attorney" by telephone.  Plaintiff, however, does not explain *how* these Defendants restricted his phone use.  Even if he had, Plaintiff could not state a constitutional claim merely because his phone use was limited in some way.  Though prisoners do retain the right to communicate with friends, family, and counsel while in prison, prisoners have no right to unlimited telephone use.  See Washington v. Reno, 35 F.3d 1093, 1099-1100 (6th Cir.1994); Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("[a] prisoner's right to telephone access ... is 'subject to rational limitations in the face of legitimate interests of the penal institution.'").  Thus, even if Defendants' alleged conduct violated some prison policy, the same conduct would not necessarily support a constitutional claim.

Moreover, in this case, Plaintiff apparently suffered no injury as a result of the alleged denial, which is a requirement for stating either a claim of denial of access to courts or for a denial of telephone access.  See Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (requiring a showing of actual injury as a constitutional prerequisite to an access to courts claim); Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3rd Cir. 1988) (holding that prisoner must make some showing of prejudice or actual injury to succeed on claim of telephone deprivation).

Plaintiff was not entirely without a means of communicating with his counsel. See Acosta v. McGrady, 1999 WL 158471 at *7 (E.D.Pa. March 22, 1999) ("A prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him."). Indeed, the first exhibit attached to Plaintiff's Supplement [Doc. 10-1] is a letter from Plaintiff's attorney about the phone access issue and thus demonstrates that Plaintiff was able to communicate with his attorney despite the phone restriction. Plaintiff has therefore failed to state any claim for telephone deprivation, and it is **RECOMMENDED** that any claims based upon the alleged denial of access to the telephone be **DISMISSED** for failure to state a claim.

## CONCLUSION

Having conducted a preliminary review of Plaintiff's Complaint, as required by 29 U.S.C. § 1915A(a), the Court finds that the Complaint fails to arguably state a claim against the fictitious parties, an Eighth Amendment claim for inadequate medical care, or any constitutional claims based on either the alleged obstruction of his mail or denial of access to the telephone. It is **RECOMMENDED** that those claims and Defendants "**John and Jane Doe**," **Foskey**, **Burnside**, **Gore**, **Mintz**, **Fields** and **Myrick** be **DISMISSED** from this action. Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the district judge to whom this case is assigned within **FOURTEEN (14) days** after being served a copy of this Order.

Plaintiff's remaining claims against Defendants **Humphrey**, **Murphy**, and **Powell** will be permitted to proceed beyond the frivolity review stage. It is thus **ORDERED** that service be made against these Defendants and that they file a Waiver of Reply, an Answer, or such other response as may be appropriate under Rule 12 of the FEDERAL RULES OF CIVIL PROCEDURE, U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of their duty to

14

avoid unnecessary service expenses and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

All parties shall at all times keep the clerk of this court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

### DUTY TO PROSECUTE ACTION

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the defendants from whom discovery is sought by the plaintiff. The defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE. The deposition of the plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

**IT IS HEREBY ORDERED** that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendants and granted by the court. This 90-day period shall run separately as to each plaintiff and each defendant beginning on the date of filing of each defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: <u>except with written permission of the court first obtained,</u> **INTERROGATORIES** may not exceed TWENTY-FIVE (25) to each party, **REQUESTS FOR**

**PRODUCTION OF DOCUMENTS AND THINGS** under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and **REQUESTS FOR ADMISSIONS** under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to requests exceeding these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

**IT IS FURTHER ORDERED AND DIRECTED** that collection of monthly payments from plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## **PLAINTIFF'S OBLIGATION TO PAY FILING FEE**

Pursuant to provisions of the Prison Litigation Reform Act, in the event plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from the plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event plaintiff is released from custody and fails to remit payments. In addition, plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED and RECOMMENDED**, this 13th day of February, 2012.

s/ Charles H. Weigle\
Charles H. Weigle\
United States Magistrate Judge