IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| LESTER J. SMITH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:12-cv-15 (MTT) (CHW) |
| | : | |
| Warden CARL HUMPHREY, *et al.*, | : | Proceedings under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Now before the Court is a motion for summary judgment filed by Defendants Humphrey, Powell, Mintz, Burnside, Gore, and Goodman. (Doc. 174).[1] Because there is no genuine dispute as to any material fact and because the Defendants are entitled to judgment as a matter of law, it is **RECOMMENDED** that the Defendants' motion be **GRANTED**.

## PROCEDURAL HISTORY

Plaintiff's *pro se* § 1983 action concerns the time he spent as a prisoner in the Georgia Diagnostic and Classification Prison ("GDCP"), from August 2010 to October 2011. (Doc. 1, pp. 4-9; Doc. 70-1, p. 6). Plaintiff's initial claims, as stated in his complaint and associated filings, were subject to frivolity review under 28 U.S.C. § 1915A. (Doc. 23). The following claims survived:

(i) **Denial of Due Process**. Plaintiff claims that Defendants Humphrey, Powell, Foskey, and Murphy denied him a periodic review of his placement in administrative segregation in violation of his due process rights.

---

[1] The Court previously dismissed Plaintiff's only claim against Defendants Foskey and Murphy. (Doc. 132). Accordingly, it is recommended that Defendants Foskey and Murphy be dismissed as parties to this action.

1

(ii) **Denial of Medical Care**. Plaintiff claims that Defendants Burnside and Gore denied him hepatitis-C treatment. Plaintiff also claimed that Defendant Gore threw away his "sick call" requests to see a dentist and optometrist.

(iii) **Interference with Court Mail**. Plaintiff claims that Defendants Powell, Mintz, and Goodman held his court mail, causing him to miss an appeal deadline.

(iv) **Retaliation**. Plaintiff claims that Defendants Humphrey and Powell kept him in administrative segregation in retaliation for filing grievances and lawsuits. Plaintiff also appears to argue that Defendants Humphrey, Powell, Mintz, and Goodman held his mail—legal and otherwise—as a retaliatory measure.

(v) **Telephone Deprivation**. Plaintiff claims that Defendants Humphrey and Powell refused to let Plaintiff call his attorney regarding an ongoing criminal case.

Following frivolity review, the remaining Defendants filed two motions to dismiss which the Court granted in part and denied in part, such that: (1) Plaintiff's due process claims were dismissed for failure to state a claim; (2) Plaintiffs denial-of-medical-care claims, apart from his hepatitis-C claim, were dismissed for failure to state a claim; and (3) Plaintiff's telephone deprivation claim was dismissed for failure to exhaust administrative remedies under 42 U.S.C. § 1997e. (Doc. 132). Plaintiff also voluntarily dismissed a personal property claim. (Doc. 1, p. 9; Doc. 16, p. 6). Therefore, the only claims remaining before the Court are "Plaintiff's retaliation claims against Defendants Humphrey, Powell, Goodman, and Mintz, his access to court claim regarding the obstruction of his legal mail against Defendants Powell, Goodman, and Mintz, and his Eighth Amendment claims against Defendants Dr. Burnside and Gore regarding the failure to treat his hepatitis C." (Doc. 132, p. 4).

## LOCAL RULE 56

Plaintiff, a self-styled "certified paralegal," (Doc. 43-1, p. 4), is a prolific filer of both grievances and legal papers. In this case, alone, which began on January 11, 2012, Plaintiff's

filings now number over one hundred.[2] Several of these filings include newspaper articles, letters from Plaintiff's extended family, and copies of websites describing the symptoms and treatments of hepatitis C.

As the Defendants note, Plaintiff failed to comply with LOCAL RULE 56 in responding to the Defendants' motion for summary judgment. (Doc. 188, pp. 1-5). Like other similar rules, LOCAL RULE 56 is designed to protect judicial resources and to streamline the resolution of motions for summary judgment by requiring the parties to organize the evidence. *See, e.g., Reese v. Herbert*, 527 F.3d 1253, 1266-72 (11th Cir. 2008). The Rule provides, in relevant part:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate. M.D.Ga. L.R. 56.

Although a portion of Plaintiff's Response brief is labeled "Material Facts," Plaintiff's material facts are not numbered, they only roughly correspond to the Defendants' material facts, and they do not include specific citations to the record. (Doc. 187). Nonetheless, Plaintiff's failure to adhere to the rules of procedure does not relieve either the Court or the Defendants of their obligations under the law. The Court, for its part, must still review the record to determine whether the Defendants' "material facts" are supported by specific evidence. *Reese*, 527 F.3d at 1269. The Defendants, for their part, still bear the burden of showing that no genuine issues of material fact exist, and that they are therefore entitled to judgment as a matter of law. *Id.* at 1268. Thus, the only change that Plaintiff's failure works under LOCAL RULE 56 is to limit the scope of

---

[2] Plaintiff is also litigating other actions before this and other courts. (Doc. 13, p. 1).

3

evidence which the Court *must* consider in ruling on the Defendants' Motion. In the words of the *Reese* Court:

> The proper course in applying [a deeming rule] at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields [contrary] facts. 527 F.3d at 1268.

Accordingly, for purposes of evaluating the Defendants' Motion for Summary Judgment, the Court *may* disregard any evidence filed by Plaintiff but not cited in either his Response, (Doc. 187), or his Sur-Reply, (Doc. 191). *See Reese*, 527 F.3d at 1270 (suggesting that district courts have "broad discretion" to overlook noncompliance with local rules). For the purposes of this recommendation, however, all of Plaintiff's filings have been considered.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to F.R.C.P. 56, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-moving party to "go beyond the pleadings," meaning that the non-movant must either (i) present specific evidence showing that there is a genuine issue of material fact; or

(ii) show by other means that the moving party is not entitled to judgment as a matter of law. *Id.* at 324-26. If the evidence presented by the non-movant is "not significantly probative" or "merely colorable," then summary judgment may be granted. *Anderson*, 477 U.S. at 249. Indeed, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cleotex Corp.*, 477 U.S. at 322.

## ANALYSIS

Plaintiff argues that the Defendants retaliated against him for filing a grievance, denied him medical care for his hepatitis C, and obstructed his court mail. As discussed below, however, Plaintiff has failed to provide sufficient evidentiary support for his claims, and the Defendants are entitled to judgment as a matter of law. Accordingly, it is recommended that the Defendants' motion for summary judgment be granted.

## RETALIATION

Because no evidence indicates that Plaintiff suffered "adverse action," the Defendants are entitled to summary judgment on Plaintiff's retaliation claims. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a claim of retaliation, though, a prisoner must establish three elements: (1) that his speech was constitutionally protected; (2) that he suffered "adverse action" such that the alleged retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) that there was a causal relationship between the alleged retaliatory conduct and the protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff claims that Defendants Humphrey and Powell threatened him with continued confinement in administrative segregation based on Plaintiff's filing of a grievance. (Doc. 1, p. 6; Doc. 10-1, p. 19). Plaintiff also appears to argue that Defendants Humphrey and Powell, along with Defendants Mintz and Goodman, held his mail—legal and otherwise—as a retaliatory measure. (Doc. 63-2, p. 16; Doc. 63-3, pp. 1-2; Doc. 75, pp. 3-4).

The record provides no support for Plaintiff's claims. Grievance records indicate that Plaintiff was "encouraged to consider his approach to resolving grievances," (Doc. 75-1, pp. 10, 13), but Plaintiff was continually provided with both grievance forms and with instructions for properly completing those forms. (Doc. 85-1, p. 6). These actions would not deter a prisoner of ordinary firmness from continuing to exercise his or her First Amendment rights. *Smith*, 532 F.3d at 1277. Similarly, there is no evidence in the record to suggest that any of the Defendants held Plaintiff's mail. (Doc. 11, pp. 11-13; Doc. 23, p. 2). Accordingly, it is recommended that the Court grant summary judgment for the Defendants.

## DENIAL OF MEDICAL CARE

Plaintiff next argues that he suffers from hepatitis C ("HCV"), and that Defendants Burnside and Gore denied him needed medical care. (Doc. 1, p. 7; Doc. 16, pp. 2-3). The Defendants argue that they did not deny Plaintiff medical care, but that Plaintiff instead repeatedly refused treatment. (Doc. 174-1, pp. 25-28). Because the record clearly supports the Defendants' arguments, and because Plaintiff has failed to present any evidence to the contrary, it is recommended that the Court grant summary judgment for Defendants Burnside and Gore.

### A. Plaintiff's Refusal of Treatment

Although Plaintiff's numerous HCV-related filings contain remarkably little information about his medical condition, the record shows that Plaintiff has an extensive history of refusing

medical treatment. While at the GDCP from August 2010 to October 2011, for example, Plaintiff refused medical treatment at least six times. (Doc. 174-15, pp. 24-30). One document recording a refusal on January 25, 2011, states: "Pt walked into the room, and stated he was going to see his own md and that he didn't need to be seen today and walked out." (Doc. 174-15, p. 25). The document in question, which was completed by Defendant Burnside, is labeled "Hepatitis C Infection Follow Up." (*Id.*). Other records from different prisons show that Plaintiff also refused medical treatment both before and after his time at the GDCP. (Doc. 174-15, pp. 5-21; 31-44; Doc. 174-16, pp. 1-8). A document from Telfair State Prison, for example, states: "Refused – due to the fact that security was present." (Doc. 174-15, p. 5).

Plaintiff makes little attempt to explain his history of refusals, except to claim, in his response to the Defendants' motion for summary judgment, that Defendants Burnside and Gore, as well as "a host of various medical personnel," forged his medical records. (Doc. 187, p. 8). According to Plaintiff:

> [The] G.D.C. places [prisoners] who require medical treatment etc. in admin seg. away from others who may witness the atrocious unorthodox regime against them. While in admin seg. an inmate must be escorted by security staff to and from a medical appointment. G.D.C. officials at medical conspire as well to issue an appointment and no one brings the inmate to said appointment. Therefore, it is now documented as a refusal when in fact Plaintiff has not refused.
>
> (Doc. 187, pp. 8-9)

Plaintiff supports his conspiratorial argument by citing an affidavit describing a November 16, 2010 encounter with Defendant Burnside. (Doc. 1-2, p. 1; Doc. 187, p. 9). The

affidavit itself is dated July 19, 2011, and it is apparently signed by two GDCP officers—presumably the escorting "security staff." (*Id.*). The affidavit reads in relevant part:

> Dr. Burnside was handed the S.O.P.'s code section along with two letters from my private physician. Dr. Burnside then became enraged and stated "You won't receive treatment you don't need it, everybody that's in prison doesn't need treatment." Dr. Burnside then asked "why do you think you're losing weight and feeling fatigued?" I stated I'm not receiving proper servings on [my] restricted vegan meals. Dr. Burnside stated he could do nothing about that. Dr. Burnside then asked why was hair on my face? I stated to Dr. Burnside I have a shaving profile in which he (Dr. Burnside) had my entire medical file directly in front of him, when I asked him is that my file, Dr. Burnside then became slightly agitated and concluded the assessment.
>
> (Doc. 1-2, p. 1)

Following his November 16, 2010 encounter with Defendant Burnside, the record shows that Plaintiff refused to be examined, refused to have his blood drawn, and refused to visit the "Hepatitis C Chronic Illness Clinic." (Doc. 174-2, p. 17; Doc. 174-15, pp. 25-30). Both the records of Plaintiff's refusals and Plaintiff's own prison grievance forms suggest that Plaintiff was motivated, at least in part, by a desire to "be treated by outside medical care" and to "go to the outside world." (Doc. 43-2, p. 2; Doc. 62, p. 2; Doc. 63-2, p. 18; Doc. 174-16, p. 1). By virtue of their confinement, though, prisoners must rely on prison authorities both to evaluate and to treat their medical needs. *See Estelle*, 429 U.S. at 103.

**B. <u>Medical Evidence</u>**

Contrary to Plaintiff's repeated assertions, it is not at all well-established that Plaintiff in fact suffered from HCV during the relevant time period. The few private medical records Plaintiff submitted show only that Plaintiff was tested, inconclusively, for Hepatitis C prior to his incarceration at the GDCP. (Doc. 95-2, pp. 4-11). Several prison medical records "Recommend[] Further Evaluation," (Doc. 152-1, p. 6; Doc. 176-1, pp. 4-9), but the first and only clear diagnosis in the record dates November 1, 2012. (Doc. 176-1, p. 18). That same diagnosis indicates that Plaintiff refused treatment. (*Id.*).

The record also indicates that Defendant Burnside ordered, but then cancelled, HCV laboratory tests following his November 16, 2010 encounter with Plaintiff. (Doc. 174-16, p. 12; Doc. 174-17, pp. 8-9). According to Defendant Burnside, the tests were cancelled, rescheduled, and then cancelled again based on Plaintiff's repeated refusal of treatment. (*Id.*).

**C. <u>Deliberate Indifference</u>**

The Eighth Amendment proscribes "deliberate indifference" to the "serious medical needs" of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To satisfy the subjective element of deliberate indifference . . . [a] Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).

The Defendants wisely do not argue that an HCV infection may not constitute a "serious medical need." *See, e.g., Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Rather, the Defendants argue that "it is Plaintiff's own conduct that bars him from establishing a claim of deliberate indifference." (Doc. 174-1, p. 27). The record supports the Defendants' argument. Extensive evidence indicates that Plaintiff consistently refused medical testing and treatment

while at the GDCP, whereas no evidence, apart uncorroborated allegations in Plaintiff's Response, supports Plaintiff's conspiratorial argument. Although Defendant Burnside's conduct during the November 16 encounter was perhaps less-than-model, it did not rise to the level of "more than gross negligence." *See, e.g., Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (noting that a showing of mere negligence in diagnosis or treatment is insufficient). Indeed, the record shows that Defendant Burnside acted reasonably following the Nov. 16 encounter—he ordered HCV laboratory tests to determine whether Plaintiff required and could benefit from treatment. *See id.* n.5 ("a public official who [acts reasonably] in response to a serious medical need cannot be found liable under the Cruel and Unusual Punishments Clause"). Because Plaintiff has failed to present any contrary evidence showing that the Defendants were deliberately indifferent, and because Plaintiff's own refusal of medical care is not attributable to the Defendants, it is recommended that the Court grant summary judgment for Defendants Burnside and Gore.

### INTERFERENCE WITH COURT MAIL

Plaintiff last argues that Defendants Powell, Goodman and Mintz obstructed his court mail,[3] causing him to miss an appeal deadline with the Georgia Court of Appeals. (Doc. 16, pp. 5-6; Doc. 47, pp. 6-7). In response, the Defendants argue only that Plaintiff "suffered no harm from the alleged obstruction." (Doc. 174-1, p. 18). In other words, the Defendants argue that Plaintiff suffered no "actual injury." *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008) ("actual injury is a constitutional prerequisite to an inmate's access-to-courts claim"). Although the Defendants' "actual injury" argument is not persuasive, Plaintiff has failed to make a

---

[3] There are two types of legal mail: (1) "privileged" or "attorney mail;" and (2) "court mail," which is "correspondence between an inmate and a state or federal judge, clerk's office, or other courthouse address." *See Al-Amin v. Smith*, 511 F.3d 1317, 1329 n.25 (11th Cir. 2008).

sufficient showing that the Defendants in fact interfered with his court mail. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). In addition, no reasonable jury could find that the Defendants "intentionally" interfered with Plaintiff's court mail. *See, e.g., Bishop v. McLaughlin*, 5:11-cv-107 (MTT), 2012 WL 1029499 at *7 (M.D. Ga. Mar. 26, 2012) ("a plaintiff seeking to succeed on a claim that his right of access to the courts has been impeded must allege intentional conduct"). Accordingly, it is recommended that the Court grant summary judgment for the Defendants on grounds not raised in their motion. *See* F.R.C.P. 56(f).

A. <u>Procedural History</u>

Plaintiff's interference-with-court-mail claim relates to the dismissal, by the Georgia Court of Appeals, of an appeal Plaintiff took from an adverse order of the Butts County Superior Court. (Doc. 75-1, p. 18). The record, though less-than-complete, indicates that Plaintiff, at some unknown time, filed a civil action in the Butts County Superior Court, where the GDCP is located, based on "conditions of confinement." (Doc. 174-4, p. 19). Later, on May 23, 2011, Butts County Superior Court Judge Thomas H. Wilson ordered the Butts County Clerk's Office "not to file any action by [Plaintiff] and to return any actions [Plaintiff] tries to file to him, without presentment to the Court." (Doc. 174-9, p. 2). Judge Wilson noted that Plaintiff was "continuously attempting to file frivolous actions, causing unnecessary expense to the county and the state." (*Id.*). The May 23 order is captioned: "CASE NUMBER 2011-ID-4." (*Id.*).

On September 8, 2011, the Georgia Court of Appeals dismissed Plaintiff's direct appeal from Judge Wilson's May 23 order. (Doc. 75-1, p. 18). The court stated that it lacked jurisdiction to

11

consider Plaintiff's direct appeal because O.C.G.A. § 42-12-8 "requires that an appeal of a civil action filed by a prisoner shall be as provided in Code Section 5-6-35." (*Id.*). O.C.G.A. § 5-6-35, in turn, requires prisoners "wishing to appeal [to first] file an application for discretionary appeal to the appropriate appellate court." (*Id.*). The Georgia Court of Appeals' September 8 order-of-dismissal is captioned: "A12A0020." (*Id.*). In the same September 8 order, though, the Georgia Court of Appeals noted that Plaintiff had "also filed an application for discretionary appeal, which was granted. See A11D0436." (*Id.*). The court then stated: "[Plaintiff] did not . . . file a notice of appeal within ten days as required by order granting his application.[4] He thus forfeited his right to pursue the appeal." (*Id.*).

No copy of the Georgia Court of Appeals' order granting Plaintiff's application for discretionary appeal in case no. A11D0436 is currently in the record. Additionally, in a "Notice of Appeal" dated August 24, 2011, Plaintiff stated: "All records on appeal in A11D0436 need to be returned to plaintiff." (Doc. 47-3, p. 3).

## B. <u>Actual Injury</u>

Defendants argue that Plaintiff has failed to present evidence of an actual injury, but this argument is not persuasive. Although prisoners have a constitutional right of access to the courts, "actual injury is a constitutional prerequisite to an inmate's access-to-courts claim." *Al-Amin v. Smith*, 511 F.3d 1317, 1325-32 (11th Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). This "actual injury" prerequisite "derives ultimately from the doctrine of standing," and it requires that prisoner-plaintiffs "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Casey*, 518 U.S. at 349-53. The Defendants appear to argue that Plaintiff suffered no "actual injury" because (1) Judge Wilson's May 23 order only barred Plaintiff from

---

[4] *See also* O.C.G.A. § 5-6-35(g).

filing future actions; and because (2) Plaintiff's appeal from the May 23 order was frivolous. (Doc. 174-1, pp. 16-19). The relevant portion of the Defendants' brief reads:

> The underlying Order issued by the Superior Court of Butts County in Case Number 2011D4 that Plaintiff was seeking to appeal, however, only barred him from filing *future actions*, noting that Plaintiff was "continuously attempting to file *frivolous actions*, causing unnecessary expense to the county and the state." (SMF, ¶ 115)(emphasis added). Plaintiff cannot establish an injury based on the rejection of a frivolous action. And to the extent that the Order barred Plaintiff from filing future actions, Plaintiff does not assert that he has attempted and been thwarted from filing a non-frivolous action in the Butts County Superior Court.
>
> (Doc. 174-1, p. 19).

The "actual injury" at issue here is Plaintiff's inability to appeal Judge Wilson's order, not Plaintiff's inability to file future actions in the Butts County Superior Court. *See, e.g., Hall v. Secretary for Dept. of Corrections*, 304 Fed. Appx. 848, 850 (11th Cir. 2008) ("missing filing deadlines is an example of an actual injury"). For the purposes of federal standing, then, the relevant "injury" occurred when Plaintiff missed the 10-day notice-of-appeal deadline due to the Defendants' alleged interference with his court mail. This injury, which resulted in the dismissal of Plaintiff's appeal by the Georgia Court of Appeals, is different from any injury wrought by Judge Wilson's order itself.

The law indicates that Plaintiff had a non-frivolous cause for appeal of Judge Wilson's May 23 order. Georgia courts recognize that "the Constitution forbids courts to abridge inmates' rights to have meaningful access to and communications with courts." *Hooper v. Harris*, 236 Ga. App. 651, 653 (1999). *See also Bounds v. Smith*, 430 U.S. 817, 822 (1977) ("It is now

13

established beyond doubt that prisoners have a constitutional right of access to the courts"). Certainly, Judge Wilson's frustration with prisoners who repeatedly file frivolous lawsuits is a frustration that this and other Courts share. *See, e.g., Miller v. Donald*, 541 F.3d 1091, 1095-99 (11th Cir. 2008) ("Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants"). Nevertheless, as noted by the *Hooper* court, among many others: "Orders restricting any inmate's access to the courts must be carefully and narrowly drawn to avoid limitations and must be clearly warranted by the particular circumstances." *Hooper*, 236 Ga. App. at 653. As such, this Court cannot conclude that Plaintiff's attempted appeal was frivolous, as the Defendants argue.

### C. Causation and Intent

Although there is sufficient evidence of "actual injury" to create a genuine issue of material fact, summary judgment is nevertheless warranted on two grounds not raised by the Defendants. F.R.C.P. 56(f). First, there is insufficient evidence to indicate that the named Defendants in fact caused the delay in Plaintiff's receipt of his court mail. Second, Plaintiff failed to demonstrate that the Defendants intentionally delayed his court mail. Because causation and intent are both essential elements of Plaintiff's court-mail claim, and because Plaintiff failed to make a sufficient showing regarding both elements, the Defendants' motion must be granted. *Celotex Corp*, 477 U.S. at 322.

    i.    CAUSATION

Plaintiff has failed to present evidence to show that the named Defendants, rather than the Georgia courts, caused the delay in Plaintiff's receipt of his court mail. By Plaintiff's own account the Georgia Court of Appeals granted Plaintiff's application for discretionary appeal on July 6, 2011. (Doc. 47-4, pp. 1-2). Plaintiff was therefore required to file a "notice of appeal"

within ten days, or by July 16. (*Id.*). Plaintiff alleges that "the Superior Court of Butts County did not file [the] order until July 13, 2011, hence only giving [Plaintiff] (3) days to file appeal." (*Id.*). According to Plaintiff, though, the "Superior Court forwarded order . . . was stamped 'filed' on the 15th of July," and it "arrived to [Plaintiff] on July 16."[5] (*Id.*). Plaintiff also admits that he had "received all legal mail, pretty much for the most part, on time prior to that specific document [a]nd even afterward." (Doc. 174-4, p. 19). Thus, at most, Plaintiff appears to allege that the named Defendants delayed the delivery of one piece of court mail for one day. *Cf. Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir. 1988) (reversing judgment for the Defendants where the Alabama Department of Corrections' Central Records Office allowed an inmate's mail to accumulate, according to regular practice, for over one month). Because the evidence, viewed in the light most favorable to Plaintiff, suggests that the Georgia courts, rather than the Defendants, are responsible for any delay in service, the Court must grant summary judgment for the Defendants.

    ii.    <u>INTENT</u>

Plaintiff also failed to show that the Defendants intentionally delayed his court mail. *See, e.g., Bishop v. McLaughlin*, 5:11-cv-107 (MTT), 2012 WL 1029499 at *7 (M.D. Ga. Mar. 26, 2012) ("[A] plaintiff seeking to succeed on a claim that his right of access to the courts has been impeded must allege intentional conduct"). A showing of "intent" requires that "the facts . . . allege that a particular piece of mail went into the hands of the defendant or that the defendant instituted a regulation or practice that would delay receipt of a prisoner's mail. *Id.* (citing *Gramegna*, 846 F.2d at 677). No evidence in the record suggests that Defendants Powell and

---

[5] The Defendants' "legal mail logs," by contrast, indicate that a "privileged mail envelope" from the Georgia Court of Appeals was given to Plaintiff on July 18, 2011. (Doc. 174-11, p. 3).

Mintz had any control, directly or indirectly, over Plaintiff's court mail. Defendant Goodman, who worked in a non-supervisory capacity in the GDPC mailroom from 2002 to 2012, admits that he began "personally delivering legal mail to inmates" "around either the latter part of 2011 or the early part of 2012." (Doc. 174-19, pp. 3-4). By Plaintiff's own account, though, Defendant Goodman began delivering mail *as a result of* grievances Plaintiff filed based on the obstruction of his court mail. (Doc. 174-4, pp. 19-20). In other words, Plaintiff alleges that his court mail "went into the hands of" defendant Goodman only *after* Plaintiff had already missed the Georgia Court of Appeals' 10-day notice-of-appeal deadline. Because Plaintiff fails to explain how the Defendants intentionally interfered with his court mail, and because no evidence in the record indicates that the named Defendants in fact interfered with his mail, it is recommended that the Court grant summary judgment for the Defendants.

## CONCLUSION

In accordance with the analysis above, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom the case is assigned **WITIHIN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 7th day of February, 2014.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge